## THOMAS WOHLFORD

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Criminal Law—Assault—Indictment for—Evidence—Intent, Testimony as to—What May Be Read to Jury as to Law in Criminal Case.*

1. A defendant charged with assault in which the intent is a necessary ingredient of the offense, is not precluded from testifying with what motive he committed the act charged against him. But, though in the case at bar the defendant was precluded from so testifying, it appears that he was not injured thereby, and therefore it did not constitute reversible error.

2. In determining what portions of judicial opinions and text books may be read to a jury by counsel in making an argument in criminal cases, much must be left to judicial discretion in each case. In the case at bar the defendant was not injured by reading the passages complained of.

[Opinion filed December 12, 1892.]

IN ERROR to the Circuit Court of Stephenson County; the Hon. JAMES SHAW, Judge, presiding.

Mr. J. A. CRAIN, for plaintiff in error.

Mr. OSCAR E. HEARD, State's Attorney, for defendants in error.

MR. JUSTICE HARKER. At the March term, 1892, of the

Circuit Court of Stephenson County, the plaintiff in error was indicted, tried and convicted for an assault with an ax upon one Curtis Likens, with intent to inflict a bodily injury. The court imposed a fine of $250. The evidence shows that while Likens was engaged in a heated conversation with one Evans, the plaintiff in error, some fifteen or twenty rods away, called out to Likens that he was a milk thief; that thereupon Likens, in an angry mood, started rapidly toward where the plaintiff in error was standing with an ax upon his shoulder; that when Likens came up to him some ugly language passed between them (about which the witnesses do not agree) and that the plaintiff in error almost instantly struck Likens upon the side of the head with the flat part of the ax. The blow was a very violent one, sufficient to fell Likens to the ground and cause profuse bleeding at the nose and mouth, concussion of the brain, and a fracture of the roof of the left orbit. Likens was unarmed, and we are thoroughly satisfied from the evidence, was making no hostile demonstrations at the time he was struck. He was standing with his hands hanging by his sides and looking in another direction.

Upon the trial Wohlford claimed that he was acting in self-defense, and that instead of striking Likens with the ax he merely held it out and pushed him off with it to prevent being struck by Likens. In view of the overwhelming testimony contradicting him upon this point, and the very serious injuries sustained by Likens, such a defense could hardly be expected to prevail. Perhaps this furnishes a reason why the abstract contains but a meager portion of the testimony of only three of the sixteen witnesses who testified upon the trial.

The court sustained objections to the following questions propounded to Wohlford while testifying in his own behalf:

1. " Now, sir, as you used the ax there, why did you use it in that way?

2. " As you used the ax on that occasion, what is the fact as to whether you intended to do the defendant any bodily injury other than in self-defense?"

The first question was proper and the court erred in sustaining an objection to it. We can not agree with counsel for the people that the intentions of a man being tried for an assault with a particular intent can only be determined by the means, acts and the circumstances connected with the perpetration of the offense. While our statute declares that criminal "intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused," and it has been repeatedly held as a general rule that the safest way of judging of one's intentions about a particular matter is to look to his acts rather than to his professions respecting it, we do not understand that a defendant charged with an assault, in which the intent is a necessary ingredient of the offense, is precluded from testifying with what motive he made the assault. His testimony in that regard may have but little weight, especially when found to be in conflict with his acts and surrounding circumstances. Nevertheless, since he is by statute allowed to testify in his own behalf, he is entitled to have it considered by the jury in connection with the other testimony. 1 Thompson's Trials, Sec. 648; Thurston v. Cornell, 38 N. Y. 281; Greer v. The State, 53 Ind. 420; White v. The State, 53 Ind. 595; Kerrains v. People, 60 N. Y. 228; 1 Bishop's Criminal Procedure, Sec. 1184. Whether the ax was used in self-defense was a question to be determined by the jury, and Wohlford had the right to state, in response to the interrogatory why he used the ax in the way he did, that he did so only with the intention of defending himself. However, we do not think this error worked any serious prejudice to the plaintiff in error. He had already, while narrating the difficulty, testified that he had used the ax merely to defend himself, and we do not see how the jury could have arrived at a different verdict had he been allowed the utmost freedom in testifying as to his intentions. The court properly sustained the objection to the other question. It was leading and otherwise objectionable.

Another error urged is, that the Circuit Court permitted

the state's attorney, against the objection of the defendant, to read in his argument to the jury several reports of other cases and statements of facts therein contained, and apply the matters so read to the case at bar. After the evidence was heard the state's attorney in his opening argument, against the objection of the defendant, read to the jury Secs. 169, 177 and 179 of Moore's Criminal Law, page 75; 1 Ohio State Reports, pages 202 and 203; 2 New York Court of Appeals, pages 540 and 541; 132 Ill. page 234; 131 Ill. page 300; 94 Ill., and pages 642, 643 and 646 of 125 Ill. The contention in this court is limited to the extracts read from the cases in 2 N. Y. and 125 Ill., and the complaint is directed against those portions containing the statements of facts. In those jurisdictions where the juries are the judges of the law as well as the facts, it is a settled rule of practice to allow counsel to read books of law to the jury. 1 Thompson on Trials, Secs. 945, 949; Stout v. The People, 96 Ind. 407; Wade v. State, 65 Ga. 756. Considerable embarrassment must necessarily arise to trial courts in determining how much of reported cases it is proper to read to the jury. They have thus far been unaided by any decision of our Supreme Court upon the subject, and from what we can learn the practice is far from being uniform in the different circuits of the State. Under some judges, we are informed, such latitude is allowed that counsel are permitted to read from almost any publications entitled a law book and bound in sheep, while under others, there is such restriction that counsel are not permitted to read from reported opinions of our own Supreme Court such portions as contain a recital of the facts and the reasoning thereon. The determination of the question in individual cases must rest largely in sound judicial discretion. It will not do to hold, as contended for here by counsel, that it is only proper to read such portions of reported cases from our Supreme Court as announce legal principles. Lawyers and trial judges often find it necessary to read the recital of facts and the reasoning thereon to comprehend the principle announced. How much more essential in such cases to the jury, who are the judges

of the law, but whose habits of study and thought have not so well prepared them to grasp legal principles as trained legal minds? We can see no impropriety in reading to the jury the entire opinion of a case reported from our Supreme Court applicable to the case on trial, except wherein a principle is announced which has since been overruled. When objection is made to reading from text books or reported cases from other States, it is the duty of the court to examine the portions proposed to be read, and if he finds the principles therein stated to be in harmony with the law of this State and applicable to the case on trial, to permit them to be read; if he finds otherwise, he should exclude them. We are unable to see how the plaintiff in error was prejudiced by the state's attorney reading the extracts from the New York and Illinois cases complained of. Had he read from no reported case the verdict could not have been otherwise.

The clear logic from the evidence and instructions given, was the guilt of the defendant.

*Judgment affirmed.*