SCOTT, BURTON v. STATE OF INDIANA.

[No. 29,667. Filed December 5, 1958.]

*Sam Blum, Albert W. Ewbank,* both of Indianapolis, and *J. Byron Hayes,* of Fort Wayne, for appellants.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Assistant Attorney General, for appellee.

ARTERBURN, J.—The appellants Scott and Burton were charged with conspiracy to commit a burglary of the Grand Leader Store in Fort Wayne and in a separate affidavit with a like offense as to the Wolf and Dessauer Company. The two cases were tried together. The appellants were found not guity of the charge involving the Wolf and Dessauer Company and guilty of the charge of conspiracy to burglarize the Grand Leader Store.

The appellants have properly presented for our review the question of the sufficiency of the evidence

to sustain the verdict. For that purpose we recite the evidence from the State's point of view:

Early in the afternoon of May 8, 1956, one Homer J. Frownfelter, a locksmith, was in his place of business at 138 West Wayne Street in the city of Fort Wayne, Indiana, when one of the appellants, later identified as Burton, came into his place of business and asked him if he could make a key for a cylinder lock without disturbing the combination and he was informed he could. Burton then left the shop and in about 15 minutes he came back with a cylinder lock. The locksmith was busy with other customers and he was required to wait his turn. As soon as it could be done the locksmith made the key and charged Burton $1.50 for the work but the latter gave him $2.00. Burton told him that the wanted the key as his wife had gone away and he did not have a key.

About an hour and a half later the same afternoon, the appellant Scott, came in with another cylinder lock and asked the locksmith if he could make a key for the lock without disturbing the combination. The locksmith told him he could and proceeded to make the key. When it was finished, Scott paid him $2.00 and left saying, "keep it all." He voluntarily paid $2.00 and walked out. This was a Yale lock of special series and was identified by special marks on the back side. These two locks were identified at the trial as the State's Exhibits 1 and 2.

The locksmith became suspicious and followed Scott from his shop to a point in the 900 block on Calhoun Street opposite Wolf and Dessauer's front door. At this point he lost Scott in the traffic and returned to his place of business and called the police department. Two detectives came immediately and while it was yet light the locksmith took the officers down to the

place where he had last seen Scott. As they passed the Earl Groth Department Store, the locksmith saw Scott standing in front of the store and pointed him out to the officers. About this time the other appellant, Scott, walked up to Burton and said something and then walked back in the entrance. At this time the officers identified themselves and one took Burton and the other took Scott for questioning. No arrest was made at that time.

Scott was asked what he was doing in Fort Wayne and he told the officer that they had gotten into town about 3 P.M. and they were to pick up some lady friends and that they were just passing through town. The appellants were asked if they would accompany the officers to the station and they said they would. They took them to the station in a police car and they sat in the back seat. While one of the officers drove the car, the other sat in the front seat and watched the appellants.

As they were going to the station, this officer observed Burton had a key in his hand and that he slipped it down along side of the cushion in the car. They continued on to the police station. There the appellants were taken out of the car and the officer, King, went back and obtained the key from the place where he saw Burton place it. When shown the key, which was marked with the name of the shop on it, Burton denied any knowledge of it. He was asked if he had the key made and he said he didn't know anything about it.

The key which the officers obtained from Burton was turned over to two other detectives to find the lock to which it fit. On the following day, these detectives with the help of the locksmith made a search of the locks on the buildings in the immediate vicinity where the appellants were apprehended and they found a

lock at the Grand Leader Store in which it fit with evidence tending to show the cylinder had been recently disturbed. That lock was removed and identified by the locksmith as being the lock for which he made the key as heretofore shown. They also located the second lock and it was identified by the locksmith as the lock for which he made the second key *but that key was not found.*

Neither party in this case is charged with actually committing the crime of burglary, since no burglary was committed. However, it is not an essential █ to the conspiracy charged, that the crime of burglary be proved. *Chappell* v. *State* (1940), 216 Ind. 666, 25 N. E. 2d 999; *Shonfeld* v. *State* (1942), 219 Ind. 654, 40 N. E. 2d 700.

The essence of the crime charged is the conspiracy. It cannot be committed by one person alone. █ There must be a concert of action in a common purpose by two or more persons.

We have said in *Robertson* v. *State* (1952), 231 █ Ind. 368, 370, 108 N. E. 2d 711, p. 712,

" 'In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co-operative conduct in the unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion. Evidence of mere relationship or association between the parties does not show a conspiracy.' "

We feel the Robertson Case is determinative of the question here. There is a definite lack of evidence of any concerted plan or joint purpose of both appellants. There is no evidence of any agreement between them to commit either or both burglaries *together*, although there may be circumstantial evidence that each intended to burglarize the store for which he obtained a key by himself. The evidence does not show they went *together* to have either key made. The most the evidence shows is an association and that they were found standing together on the street. Mere association alone, without further evidence of some agreement or concerted action directed toward the common purpose of the alleged crime to be attempted is not sufficient to support a conviction of a conspiracy.

As said in other like cases before this court, the most that can be said of the evidence in this record is that it tends to establish a suspicion of guilt, particularly as to Burton who was found with the key he had made. *Robertson* v. *State* (1952), 231 Ind. 368, 108 N. E. 2d 711; *Mattingly* v. *State* (1957), 236 Ind. 632, 142 N. E. 2d 607; *Taylor, Bryant* v. *State* (1956), 235 Ind. 126, 131 N. E. 2d 297.

The finding of a key which Burton had made and then which he attempted to hide in the seat of the police car, may be circumstantial evidence of his intentions to burglarize the particular building where the key fit, but it does not connect the other appellant, Scott, with such a plan.

As we said previously, it takes more than one person to constitute a conspiracy. So far as the charge of which the appellants were convicted (The Leader Store Case), only one person, Burton, is implicated. As to the other case the appellants were found not guilty of the offense charged.

There is a failure of proof as to the crime of conspiracy as charged.

The judgment is reversed with directions to grant a new trial.

Landis, C. J., Achor, Emmert, Bobbitt, JJ., concur.

NOTE.—Reported in 154 N. E. 2d 107.