ROBERTS, BOARD *v.* STATE OF INDIANA.

[No. 30,424.   Filed April 1, 1964.]

*James W. Bradford,* of Indianapolis, for appellants.

*Edwin K. Steers,* Attorney General, and *Frederick J. Graf,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellants were charged with armed robbery "forcibly by violence and putting Melvin Calvert in fear" and taking from his possession money "then and there the property of *Walt's South Side Market, Inc.,* a corporation." The defendants were both found guilty as charged and sentenced accordingly. By a motion for a new trial they asked for a reversal [1] on the ground that there is a material variance in the evidence in that there was no proof that the money taken was the property of "Walt's South Side Market, Inc." as alleged, although there was testimony with reference to Walt's South Side Super Market, Walt's Super Market, Walt's Market, and various other somewhat similar names; and [2] that there is not sufficient evidence showing that the appellant-Board participated in the alleged crime.

It is urged by the State that the essential element of the offense is the allegation of the taking of the money with force and violence from the person of Melvin Calvert, and that the allegation that the money was the property of *Walt's South Side Market, Inc.* was

surplusage and at most, went to show that the money was not the property of the accused. *Welch* v. *State* (1924), 195 Ind. 87, 143 N. E. 354; 25 I. L. E., Robbery, §3.

A review of the evidence shows that two witnesses stated they were cashiers at *"Walt's Southside Market"* at the time of the alleged robbery, and recited the events with reference to the alleged robbery at the time. Both witnesses identified appellant-Roberts. They testified that the money belonged to *"Walt's South Side Market."* A third witness, Gilbert Silverman, testified that he was a customer in *"Walt's Southside Market"* at the time of the holdup. Lowell Lynn stated that he was an employee of "Walt's Southside Supermarket" on the night in question and observed the events which were the same as those referred to by the other witnesses. The police referred to "Walt's Southside Supermarket" when they were called to the scene of the holdup. Melvin Calvert referred to "Walt's Supermarket" located at 1053 South West Street, and recited the same events as taking place at the same time, and referred by name to the cashiers who testified as witnesses. We therefore have witnesses interchangeably using these names for the same location of the store, market, or supermarket in question and referring to the same place, the same date and the same events. Anyone listening to this testimony would conclude that these names were used interchangeably and were names by which the place, store or market was commonly known.

It seems to us the principle of *idem sonans* is applicable here. At most, it can be said that the place was identified, as alleged in the affidavit, as "Walt's Southside Market," omitting the "Inc." This is a similar situation to that where a defendant is

named and the word "Junior" or "Senior" is affixed thereto. It has been held that such an abbreviation and description need not be proved. *Allen* v. *The State* (1876), 52 Ind. 486; *Ross* v. *State* (1889), 116 Ind. 495, 19 N. E. 451; *State* v. *Simpson* (1906), 166 Ind. 211, 76 N. E. 544.

A somewhat similar case is that of *Headlee* v. *State* (1929), 201 Ind. 545, 168 N. E. 692, 170 N. E. 433, in which the evidence of the ownership of the automobile alleged to have been taken varied from "American Security Company," "American Security Company, a Corporation" and "American Security, a Corporation." The evidence actually showed the ownership to be in the "American Security Company of Rushville," a corporation. The court held this was not a material variance and stated:

" . . . Throughout the evidence, the owner of the automobile which was taken was referred to as 'American Security Company.' The evidence was conclusive that this company was located in Rushville, Indiana. Although the corporate name of the owner was 'American Security Co. of Rushville,' it can be inferred from the evidence that it was generally known as 'American Security Company.' There is no doubt as to what corporation was meant when that name was used in the indictment and was used in the evidence. Although the 'American Security Company' was named in the indictment and in the evidence as owner, the defendant introduced in evidence a copy of its articles of incorporation to show that the words 'of Rushville' were part of its name. The variance in the instant case was not of such a character as would mislead the defendant or expose him to the peril of being put twice in jeopardy for the same offense." *Headlee* v. *State* (1929), 201 Ind. 545, 554, 168 N. E. 692, 170 N. E. 433.

The test in determining whether a variance is material is whether the defendant was misled by the varia-

tion in the evidence in his preparation for his defense and whether the defendant will be protected in the future against double jeopardy as to the same offense. In this case it is apparent from the evidence that the defendant was not misled. *Madison* v. *State* (1955), 234 Ind. 517, 130 N. E. 2d 35. In fact, none of the witnesses were confused or misled as to the time and place of the offense.

We point out further the appellant made no objection to the admission of the evidence wherein the interchangeable names were used for the market in question. Objections must be promptly made that such evidence is not material or relevant. *Butler* v. *State* (1963), 244 Ind. 620, 193 N. E. 2d 899. If this had been done at the time, there is no question but what an exact name would have promptly been produced and any error corrected. A party may not sleep on alleged error in the trial court and raise it later on appeal.

On the contention that appellant-Board was not connected with the crime, the evidence shows that he admitted his presence in the getaway car, but claimed he was intoxicated at the time, while a police officer testified as to his flight and an attempt to elude arrest after the car he was in had hit a fence. The evidence shows that Board was the driver of the getaway car. With this evidence, the trier of the facts had sufficient grounds to believe Board participated in the alleged offense. *Ard* v. *State* (1958), 238 Ind. 222, 149 N. E. 2d 825; *Evans* v. *State* (1946), 224 Ind. 428, 68 N. E. 2d 546.

" . . . presence of one at the commission of a felony and companionship with another engaged therein, and a course of conduct before and after the offense, are circumstances which may be con-

sidered in determining whether aiding and abetting may be inferred." *Mobley* v. *State* (1949), 227 Ind. 335, 85 N. E. 2d 489.

Judgment is affirmed.

Landis, C. J., and Achor and Myers, JJ., concur. Jackson, J., dissents without opinion.

NOTE.—Reported in 197 N. E. 2d 304.